**EXPRESS ONE INTERNATIONAL, INC., Appellant,**

v.

**John T. STEINBECK, Appellee.**

**No. 05–00–00617–CV.**

Court of Appeals of Texas, Dallas.

Aug. 22, 2001.

John F. McCarthy, Jr., Jimmy Derek Braziel, Littler Mendelson, P.C., Dallas, for Appellant.

Scott A. Whisler, Kimberly Paige Harris, Grau & Bassett, P.C., Dallas, for Appellee.

Before Justices MORRIS, JAMES, and FITZGERALD.

## OPINION

Opinion By Justice MORRIS.

In this suit, Express One International, Inc. seeks to recover damages allegedly caused by an e-mail message sent by John T. Steinbeck, a former employee of Express One. Using the screen name "ExpresONE," Steinbeck posted on an internet message board a message containing negative comments about union supporters. Express One immediately denied responsibility for the message and brought claims against Steinbeck for trade name dilution, invasion of privacy, negligence, and conversion. The trial court granted summary judgment in favor of Steinbeck and ordered that Express One take nothing by its claims. Express One appeals the judgment, contending the trial court erred in granting Steinbeck's motion for summary judgment because the motion was not supported by evidence. In the alternative, Express One argues it raised a material fact issue with respect to each of its causes of action. We conclude the trial court correctly rendered summary judgment for Steinbeck. We affirm the trial court's judgment.

I.

Express One International, Inc. employs pilots as part of its airline freight carrier and charter passenger business. In 1998, the pilots participated in a labor representation election. Specifically, the pilots were deciding whether they would join a trade union. The National Mediation Board oversaw the election campaign.

During the course of the campaign, John T. Steinbeck, a former pilot for Express One, posted a message on an internet message board using the screen name "ExpresONE." The complete message read: "For you vocal union supporters, I'd be watching your backs. We know who most of you are who are posting your anti-company propaganda. We're not stupid." Express One monitored the message board and, upon discovering the message, immediately informed both its pilots and the NMB that it was not responsible for the posting.

The Express One pilots voted to join the International Brotherhood of Teamsters. After investigating the possible effect of the e-mail posting on the election, the NMB certified the election results in favor of the union. Express One protested the certification and filed suit against the NMB and the Teamsters union.

When Express One found out it was Steinbeck who authored the anti-union message, it filed this suit against him alleging claims for trade name dilution, invasion of privacy, defamation, and negli-

gence. Express One later dropped its claim for defamation and added a claim for conversion. In its third amended petition, Express One listed its damages as follows: (1) damages related to identifying Steinbeck as the individual who made the posting on the internet message board; (2) damages related to proceedings before the NMB specifically dealing with the posting and its effect on the election process; (3) damages related to proceedings against the NMB specifically dealing with the posting and its effect on the election process; (4) the cost associated with filing the suit; and (5) damages related to the use of "administrative resources" as a result of Steinbeck's posting. Steinbeck responded with counterclaims, including invasion of privacy and abuse of process.

Steinbeck filed a motion for summary judgment challenging each of Express One's claims on both traditional and no-evidence grounds. In response, Express One contended Steinbeck's motion was insufficient because it was not supported by any summary judgment evidence. Express One also filed summary judgment evidence in an attempt to raise material fact issues. The trial court granted Steinbeck's motion and ordered Express One recover nothing. Steinbeck then voluntarily dismissed his counterclaims rendering the summary judgment final. Express One brought this appeal presenting five issues for our determination.

## II.

■ Express One first argues that Steinbeck's failure to present any summary judgment evidence mandated the denial of his motion. Steinbeck's motion for summary judgment, however, did not require him to present any evidence. Steinbeck's request for a traditional summary judgment attacked the sufficiency of Express One's pleadings. By his motion, Steinbeck sought to establish that the causes of action alleged by Express One were not recognized in Texas law. *See Higbie Roth Constr. Co. v. Houston Shell & Concrete,* 1 S.W.3d 808, 811 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). Such a motion does not necessarily require the presentation of evidence, but merely an analysis of the law. *See id.* Furthermore, Steinbeck's request for a no-evidence summary judgment placed the burden on Express One to present evidence sufficient to raise a genuine issue of material fact. *See Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.—Dallas 2000, no pet.). Steinbeck had no obligation to present any evidence in support of his motion for a no-evidence summary judgment. *See id.* Express One's first argument is without merit.

■ Express One's next argument is that it raised a material fact issue relating to its negligence claim and, therefore, the trial court erred in rendering summary judgment on that cause of action. Steinbeck's motion for summary judgment challenged the existence of both a duty and recoverable damages. Steinbeck argues that Express One failed to show a direct injury caused by his actions and that Express One's pleadings allege damages only in the form of financial expenditures it could have chosen not to make. We conclude Express One failed to plead damages recoverable in its negligence action.

■ Damages resulting solely from economic harm generally are not recoverable in simple negligence actions.[1] *See Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 290 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.); *see also Canal Elec. Co. v. West-*

---

1. We use the term "simple" negligence to distinguish it from other types of tort claims such as professional malpractice and negligent misrepresentation.

*inghouse Elec. Co.,* 973 F.2d 988, 998 (1st Cir.1992); *Barber Lines A/S v. M/V Donau Maru,* 764 F.2d 50, 57 (1st Cir.1985); *Louisiana ex rel Guste v. M/V Testbank,* 752 F.2d 1019, 1029 (5th Cir.1985); *Dundee Cement Co. v. Chem. Labs., Inc.,* 712 F.2d 1166, 1169–70 (7th Cir.1983). To be entitled to damages for negligence, a party must plead and prove either a personal injury or property damage as contrasted to mere economic harm. Among the policy reasons supporting this rule is the difficulty, if not impossibility, of placing a reasonable limit on a defendant's liability to those who suffer solely economic damages caused by a negligent action. *See Barber Lines,* 764 F.2d at 54–55. In this case, Express One's alleged damages included the costs of identifying Steinbeck as the person who posted the message, bringing proceedings before the NMB, and filing the lawsuit against the NMB and the Teamsters union. These alleged damages simply describe economic harm. Because Express One alleged only economic damages, the trial court correctly ruled against Express One on its negligence claim as a matter of law.

■ Express One also challenges the summary judgment on its claim for trade name dilution, arguing it raised a fact issue about whether Steinbeck engaged in conduct likely to "dilute" the distinctive quality of Express One's trade name. Express One brought its claim under section 16.29 of the Texas Business and Commerce Code. Section 16.29 states:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

TEX. BUS. & COM.CODE ANN. § 16.29 (Vernon Supp. Pamph.2001). The owner of a distinctive mark or trade name may obtain relief under section 16.29 if there is a likelihood of dilution due to either "blurring" or "tarnishing." *See Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1081 (5th Cir.1997). "Blurring" is a diminution in the uniqueness and individuality of a mark or trade name. *Id.* A trade name may be "tarnished" from another's use of it in a manner that tarnishes or appropriates the goodwill and reputation associated with the name. *Id.*

■ In his motion for summary judgment, Steinbeck contended Express One had no evidence that its trade name had been "diluted" by his actions. We agree. Dilution by blurring occurs only when the plaintiff's trade name is used by another as his own trade name, thereby weakening the plaintiff's ability to use the name as a unique identifier of its goods and services. *See E. & J. Gallo Winery v. Spider Webs Ltd.,* 129 F.Supp.2d 1033, 1038 (S.D.Tex. 2001); 3 MCCARTHY ON TRADEMARKS § 24:103 (2000). Express One produced no evidence that Steinbeck ever used the name "Express One" as a trade name or that the name "Express One" was weakened because the public associated the name with Steinbeck rather than Express One. Accordingly, Express One produced no evidence of blurring.

■■ A claim of trade name dilution by tarnishing must also arise out of the defendant's use of the plaintiff's name as a trade name. *See Exxon,* 109 F.3d at 1084. Section 16.29 is not intended to address non-trademark uses of a name to comment on, criticize, ridicule, parody, or disparage the goods or business of the name's owner. *See* 3 MCCARTHY § 24:105. Rather, it is intended to address a defendant's use of a trade name similar to that of the plaintiff on products that are markedly inferior or

of a different quality and nature than those of the plaintiff. *See Exxon,* 109 F.3d at 1084 n. 21.

■ As stated above, Express One produced no evidence that Steinbeck ever used the name "Express One" as a trade name. Furthermore, Steinbeck's use of the screen name "ExpresONE" was completely unrelated to any goods or services associated with the name. Where a mark is used in such a way that it is unrelated to the quality of a product or service, no tarnishing can occur. *See* 3 McCARTHY § 24:105. Absent any evidence of dilution by blurring or tarnishing, the trial court correctly granted summary judgment against Express One on its claims under section 16.29.

■ Express One next challenges the summary judgment on its claim for invasion of privacy. Express One acknowledges there is no Texas authority granting corporations a right of privacy. It argues, however, that a corporation should be allowed to sue for invasion of privacy as a logical extension of its right to sue in tort. *See, e.g., U.S. Sporting Products v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 218 (Tex.App.—Waco 1993, writ denied) (corporation may sue for misappropriation). Express One notes that its invasion of privacy claim is not based on allegations of intrusion into its seclusion, but rather on the alleged misappropriation of its name. *See Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994) (one who appropriates to his own use or benefit the name or likeness of another is subject to liability for invasion of privacy). Express One argues that this species of invasion of privacy should be equally available to corporations as it is to individuals.

■ Even assuming Express One had a legal right to sue for invasion of privacy by virtue of the alleged misappropriation of its name, we conclude it pro-

duced no evidence to support its cause of action. The three elements of invasion of privacy by misappropriation are: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *See id.* Texas law does not protect a name *per se,* but the value associated with it. *See id.* Liability for invasion of privacy arises only when the defendant appropriates for his own benefit the commercial standing, reputation, or other values associated with the plaintiff's name. *See id.* Generally, an appropriation becomes actionable when the name is used "to advertise the defendant's business or product, or for some similar commercial purpose." *See id.* (quoting RESTATEMENT (SECOND) OF TORTS § 652C, cmt. b (1977)).

In this case, Express One produced no evidence that Steinbeck appropriated the name "Express One" for his own benefit because of any value associated with the name. Express One made no showing that Steinbeck used the name because he wished to appropriate its commercial or reputational value. Indeed, there is no evidence Steinbeck intended to receive any benefit at all as a result of his using the name. The evidence produced by Express One simply implied that Steinbeck intended to impugn Express One's reputation, rather than appropriate it. We conclude the trial court correctly granted summary judgment in favor of Steinbeck on Express One's claim for invasion of privacy by misappropriation.

■ Finally, Express One contends the trial court erred in granting summary judgment on its claim for conversion. Express One argues that its trade name is property over which Steinbeck exercised unauthorized dominion and control. Steinbeck responds that, to the extent a trade

name is property, it is intangible property and, therefore, not subject to conversion.

Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted. *See Neles–Jamesbury, Inc. v. Bill's Valves,* 974 F.Supp. 979, 982 (S.D.Tex.1997). Here, Express One has neither alleged nor provided any summary judgment evidence that Steinbeck converted any document or other tangible embodiment of its trade name rights. Express One argues that once Steinbeck placed "ExpresONE" on the e-mail message, its trade name became tangible. Express One cites no authority for this proposition, and we have found none. We note that one court has held that an internet webpage address is intangible property not subject to conversion. *See Ciccorp, Inc. v. Aimtech Corp.,* 32 F.Supp.2d 425, 430 n. 9 (S.D.Tex.1998). We conclude Steinbeck's posting using the screen name "ExpresONE" on the internet did not convert an intangible property right into a tangible one. Our conclusion is supported by case law that refuses to allow plaintiffs to recharacterize trademark infringement claims as claims for conversion. *See Neles–Jamesbury,* 974 F.Supp. at 982 (Texas law does not recognize a claim for conversion of a trademark). The trial court correctly granted summary judgment on Express One's claim for conversion.

Because we conclude the trial court correctly granted Steinbeck's motion for summary judgment, we affirm the trial court's judgment.